DOMENGEAUX, Judge.
This is a suit on a group life insurance policy allegedly issued by defendant, Pilot Life Insurance Company, to the Boiler Makers Local Union Number 79 of Lake Charles, Louisiana, one of the members of which was the deceased husband of the plaintiff herein.
On June 16, 1970, the Union made application to defendant for a policy of insurance protecting the lives of its members and their dependents, wherein it requested an effective date of July 1, 1970. The requested effective date was subsequently changed to August 1, 1970 by agreement between the Union and defendant. On September 7, 1970, plaintiff’s husband, Earn L. McFarlain died and shortly thereafter *507 she made a claim upon defendant for the benefits allegedly due her. The latter failed to pay the claim, and instead on October 7, 1970, notified the Union’s business manager, Mr. A. E. Vincent, that it would not issue the group policy applied for and returned all monies deposited with it by the Union.
Plaintiff then filed the instant suit seeking benefits for the death of her husband, under the alleged policy, and in the alternative, pleading that the acts and omissions of defendant, upon which plaintiff and her husband had placed detrimental reliance, estopped it from denying coverage for the death of her husband. Following a trial on the merits, judgment was rendered for defendant and plaintiff has appealed to this court.
The defendant’s position is basically that a condition contained in the application form filed by the Union and upon which the issuance of a policy depended, was not met by the Union. That provision of the policy reads as follows:
“ * * * it is agreed that no insurance shall become effective until (a) the application shall have been approved by Pilot Life at its Home Office; (b) an initial premium shall have been paid; (c) if employees are to contribute toward the cost of their insurance, at least 75% (85% if less than 30 insured) of all eligible employees have made written request for the insurance; * * *.”
The members of the Union were to make monthly contributions of $3.03, as the deceased and others had in fact done, and so the provision requiring a 75% enrollment become effective. It is undisputed that the enrollment never reached 75% of the Union’s membership and therefore defendant argues that there never existed a policy of insurance under which it could be held liable to plaintiff, and that it was justified in refusing to issue such a policy.
Additionally, to show the limitations placed on its agents, defendant points to a second provision of its application form which is printed immediately above the signature lines thereon. It reads thusly:
“NOTICE: Agents are authorized to receive and forward applications but only the President, a Vice-President or the Secretary has the power on behalf of Pilot Life Insurance Company to make or modify any contract or policy or to waive any of the provisions of any policy or of this Application, and then only in writing. Pilot Life Insurance Company shall not be bound by any promise or representation made by any person other than as stated above.”
The plaintiff proved to the satisfaction of the trial court, and to ours, that the Union leadership and members were never told of the 75% enrollment requirement other than by its presence on the application form. Further it was proved that assurances were given to the Union leadership by the general agent who solicited their insurance business and by the group resident manager of defendant, that coverage was in effect as of August 1, 1970.
From these facts plaintiff argues, citing numerous authorities, that the above-quoted policy provisions were waived by defendant through its agents and that because of the detrimental reliance placed on their representations by plaintiff and her husband, defendant is estopped from denying coverage.
While we recognize the righteousness of plaintiff’s argument and sympathize with her plight, we are prohibited from acceding to her position by a specific statute of this state, La.R.S. 22:175, subd. A(2) which in relevant part, reads as follows:
(2) “ * * * A policy on which all or a part of the premium is to be derived from funds contributed by the insured employees may be placed in force only if at least seventy-five per cent of the then eligible employees, excluding any as to whom evidence of individual insurability *508 is not satisfactory to the insurer, elect to make the required contributions. * * * >>
Clearly then, the requirement that 75% of the members of the Union be enrolled before the policy becomes effective is not merely a condition of the application, but is also a requirement of our law, and while the defendant may have waived the provisions of its application form, a point we do not decide, it could not have waived the provisions of the law. La.R.S. 22:3. Since there was never an enrollment even approximating 75% of the Union membership, therefore, no contract of insurance was ever confected and defendant is under no obligation to pay benefits for the death of plaintiff’s husband.
Neither does the doctrine of equitable es-toppel avail plaintiff. We note that the above-quoted provisions of the application for insurance were printed in the form furnished by defendant directly above the signature lines. Thus it required little effort for the Union officials who signed the application to read those provisions and understand their plain and unambiguous language, rather than simply rely on the representations of the insurance agents. Because the provisions were printed on the form, plaintiff’s point that the blanks were not filled in when the Union officials signed is without merit or consequence. Most importantly, La.R.S. 22:3 provides that “No person shall transact a business of insurance in this state without complying with the provisions of this Code.” The Code referred to is the Louisiana Insurance Code of which La.R.S. 22:175, subd. A(2) partially quoted above, is a part. It is well settled in our law and jurisprudence that estoppel cannot be invoked to impair the effect of a prohibitory law. La.C.C. Articles 11 and 12; Williams v. Alexander, La.App., 193 So.2d 94.
Although the equities of this case appear to heavily favor plaintiff, we are permitted to decide according to equity only in the absence of expressed law. La.C.C. Article 21; Williams v. Alphonse Mortgage Co., La.App., 144 So.2d 600. Such is not the case here, and the legislature having spoken, it is not for the courts to alter their words to suit the exigencies of a particular situation. La.C.C. Article 20; Williams v. Alphonse Mortgage Co., supra. Accordingly the judgment appealed from must be and the same is hereby affirmed.
Affirmed.